UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.  8:23-cr-25-VMC-AEP

CALEB HUNTER FREESTONE ET AL.

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT**

The United States of America responds in opposition the defendants' Motion to Dismiss Count One of the Superseding Indictment, in which they argue that Count One fails to state an offense.[1]  Docs. 102.  Count One sufficiently alleges a civil rights conspiracy, in violation of 18 U.S.C. § 241.  The Superseding Indictment is sufficient because it alleges each of the essential elements of the violation of Section 241, including specifying the object of the conspiracy:  to injure, oppress, threaten, and intimidate employees of facilities providing reproductive health services in the free exercise and enjoyment of the right statutorily secured to them by 18 U.S.C. § 248(c)(1).  Doc. 54.  Because Count One tracks the statutory language and specifies the manner in which the defendants violated the statute, it provides fair warning about the charge they must defend against.  *See, e.g.*, *Hamling v. United States*, 418 U.S. 87, 117 (1974).

---

[1] On May 4, 2023, Defendant Gabriella Oropesa filed the instant motion to dismiss. Doc. 102. Defendants Caleb Hunter Freestone and Amber Marie Smith-Stewart subsequently filed motions to adopt Defendant Oropesa's motion, which the court granted. Docs. 104-107.

1

Section 248(c)(1) of the Freedom of Access to Clinic Entrances (FACE) Act creates an individual right to provide and obtain reproductive health services free from force or threat of force, physical obstruction, injury, intimidation, or interference. Count One alleges a Section 241 conspiracy to violate the individual right created by Section 248(c)(1). Unlike Section 371 conspiracies, Section 241 does not require the government to prove a conspiracy to commit a federal offense; rather, Section 241 requires the government to prove a conspiracy to violate individual rights, like those created by Section 248(c)(1). Nor do Section 241 conspiracies require proof of state action. The language of the statute contains no such requirement; private actors are regularly charged with and convicted of conspiring to violate civil rights.

Accordingly, the Court should deny the defendants' request to dismiss Count One of the Superseding Indictment.

## I.     Relevant Background

On March 22, 2023, a federal grand jury in the Middle District of Florida returned a three-count Superseding Indictment. Doc. 54. Count One of the Superseding Indictment charges Defendant Gabriella Victoria Oropesa, as well as co-conspirators Caleb Hunter Freestone, Amber Marie Smith-Stewart, and Annarella Rivera with conspiring to injure, oppress, threaten, and intimidate employees of facilities providing reproductive health services in the free exercise and enjoyment of the right to provide reproductive health services – a right secured by law as provided in 18 U.S.C. § 248(c)(1). Doc. 54. Counts Two and Three of the Superseding

Indictment allege that Defendants Freestone, Smith-Stewart, and Rivera also committed substantive FACE Act violations in the Middle District of Florida. *Id.*

These charges arise from the defendants' conduct during the late spring and summer of 2022. During that time, the defendants traveled to various reproductive health facilities in Florida under cloak of darkness and, with their faces and identifying features obscured by masks, hats, gloves, and dark clothing, spray-painted threats on the facilities. The spray-painted messages included "If abortions aren't SAFE then niether [sic] are you," "YOUR TIME IS UP!!," "WE'RE COMING for U," and "We are everywhere," among others. The co-conspirators targeted reproductive health facilities that provided alternatives to abortion, including counseling, pregnancy testing, ultrasound examinations, and referral services. As alleged in the Superseding Indictment, the co-conspirators attacked the reproductive health facilities in order to injure, oppress, threaten, and intimidate the employees of those facilities from providing and seeking to provide reproductive health services. Doc. 54.

II. <u>Memorandum of Law</u>

    a. **The Superseding Indictment is Sufficient.**

The defendants assert that Count One of the Superseding Indictment fails to state an offense. Doc. 102 at 1. "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in original). It is well-settled that an indictment is considered legally sufficient if it: "(1) presents the essential elements of the charged

3

offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002). "An indictment that tracks the language of the relevant statute is sufficient, as long as it provides a statement of facts and circumstances that give notice of the offense to the accused." *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007) (*citing Russell v. United States*, 369 U.S. 749, 765 (1962)). The Superseding Indictment against the defendants easily meets these standards.

Count One of the Superseding Indictment tracks the language of Section 241 and provides paragraphs alleging both the plan and purpose of the conspiracy, and the manner and means of the conspiracy. Doc. 54 at 1-3. These paragraphs provide ample notice to the accused co-defendants of the charge to be defended against and bar against double jeopardy for any subsequent prosecution for the same offense.

Because the Superseding Indictment is sufficient, the defendants' Motion to Dismiss should be denied.

### b. Section 248(c)(1) Creates an Individual Right.

The defendants are charged, pursuant to Section 241, with conspiring to injure, oppress, threaten, and intimidate employees of reproductive health services facilities in the free exercise and enjoyment of their right to provide and seek to provide reproductive health services. Doc. 54. As the Supreme Court has explained, "Congress intended [Section 241] to incorporate by reference a large body of

potentially evolving federal law." *United States v. Kozminski*, 487 U.S. 931, 941 (1988). "[H]istory leaves no doubt that, if we are to give Section 241 the scope that its origins dictate, we must accord it a sweep as broad as its language." *United States v. Price*, 383 U.S. 787, 801 (1966). The defendants are correct that not every federal law creates an individual right; rather, Section 241 prohibits "only intentional interference with rights made specific either by the express terms of the federal Constitution or laws or by decisions interpreting them." *Kozminski*, 487 U.S. at 941. Section 248(c)(1), the civil provision of the FACE Act, secures the right to provide and obtain reproductive health services free from force or threat of force, physical obstruction, injury, intimidation, or interference.

In determining whether a right has been "made specific" by a particular federal law, courts look to both the language and history of the statute. *See Gonzaga University v. Doe*, 536 U.S. 273, 286 (2002), (explaining that the "text and structure" of a statute should be reviewed to determine whether Congress intended to create new individual rights); *see also United States v. DeLaurentis*, 491 F.2d 208, 212 (2d. Cir. 1974) (discussing *United States v. Johnson* and explaining that "the entire Court agreed that the language and history of a particular federal statute determined whether it could serve as the source of a 'right' underlying a Section 241 prosecution"). As explained below, the language and history of Section 248(c)(1) demonstrate that it creates an enforceable individual right.

      i. <u>Analogous Civil Statutes Create Rights Enforceable under Section 241.</u>

There are few published opinions specifically analyzing whether a civil statute creates a federal right enforceable under Section 241. Nonetheless, the case law that is available demonstrates that Section 248(c)(1) creates such a right. In *United States v. Johnson*, the Supreme Court held that the right to public accommodation established by Section 201 of the Civil Rights Act of 1964 created a right enforceable under Section 241. 390 U.S. 563, 566 (1968). The Court explained that its ruling was based in part on the text of Section 201 which read, "[N]othing in this title shall preclude any individual or any state or local agency from asserting any right based on any other federal or state law not inconsistent with this title . . . or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right." *Id.* The Court held that this text provided clear evidence that Section 201 did not preempt other modes of protecting a federal right, such as via prosecution under Section 241. *Id.* Section 248 similarly includes a provision clarifying that that statute does not preempt other modes of protecting the federal right it created. *See* 18 U.S.C. § 248(d) ("Nothing in this section shall be construed to provide exclusive criminal penalties or civil remedies with respect to the conduct prohibited by this section, or to preempt State or local laws that may provide such penalties or remedies").

Conversely, at least one federal court of appeals found that a civil statute could not form the basis of a Section 241 conspiracy when the legislative history indicated that Congress did not intend for any criminal penalties, or even any private civil suits, to attach to the underlying statute. *DeLaurentis*, 491 F.2d at 212-13. The Second Circuit was concerned that conspiratorial conduct could be criminally punishable,

6

when violators of the underling statute were not subject to any criminal liability at all, nor were they subject to civil damage suits. *Id.* The statutory scheme of the FACE Act is easily distinguishable from the statute construed by the Second Circuit in *DeLaurentis*: the statutory scheme of the FACE Act includes both criminal penalties and civil remedies. *See* 18 U.S.C. § 248.

> ii. <u>Congress Intended to Establish an Enforceable Federal Right When It Passed Section 248(c)(1).</u>

Because there are relatively few cases considering whether a civil statute creates a right enforceable under Section 241, it is helpful to examine the law that has developed under 42 U.S.C. § 1983.[2] In this context, the Supreme Court has established the following three factors for courts to consider when analyzing whether a right has been created by statute: 1) whether Congress intended the statute to directly benefit individuals; 2) whether the statute is so 'vague and amorphous' that its enforcement would strain judicial competence; and 3) whether the statute is couched in mandatory, rather than precatory terms. *See Gonzaga*, 536 U.S. at 282 (quoting *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)). Under each of these factors, it is clear that Congress intended Section 248(c)(1) to confer an individual right.[3]

---

[2] 42 U.S.C. § 1983 reads, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…."

[3] The defendants' citation to *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) is irrelevant for purposes of determining whether Congress intended to create a statutory right. *See* Doc. 102 at 11. In *City of Rancho Palos Verdes*, there was no dispute that the statute at issue created an individually enforceable right. 544 U.S. at 120. Rather, the question in that case was whether

First, for a statute to create a federal right, Congress must have intended that the provision in question benefit the person claiming the right. *Gonzaga*, 536 U.S. at 282 (quoting *Blessing*, 520 U.S. at 340). To meet this standard, the statute must confer an "individual entitlement," evidenced by the fact that the text uses "rights-creating" language. *Id.* at 287; *see also Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006) (interpreting *Gonzaga* to clarify the first factor established by *Blessing*). As the Sixth Circuit explained, "'[a]n aggregate focus' unconcerned 'with whether the needs of any particular person have been satisfied' is insufficient; the statute must be 'phrased in terms of the persons benefited' and use 'individually focused terminology.'" *Harris*, 442 F.3d at 461 (quoting *Gonzaga*, 536 U.S. at 284, 287-88).

Section 248(c)(1) uses exactly the sort of "rights-creating" and "individually-focused" language that courts have upheld, speaking in terms that prohibit injury, intimidation, or interference with "any person" who is obtaining or providing reproductive health services. *See D.O. v. Glisson*, 847 F.3d 374, 378 (6th Cir. 2017) (Child Welfare Act created federal right because it mandated payments "on behalf of each child"); *Harris*, 442 F.3d at 461-62 (Medicaid's freedom of choice provision created federal right because it provided a choice to "any individual eligible for medical assistance"); *cf. Gonzaga* at 287-88 (FERPA did not create a federal right because it spoke "only in terms of institutional policy and practice, not individual instances of

---

Congress intended that statute's judicial remedy to coexist with remedies available under Section 1983. *Id.* at 120-21.

disclosure," and spoke "only to the Secretary of Education," and not individuals, in directing funds).

Second, to create a federal right, a statute must not be so "vague and amorphous" that its enforcement would strain judicial competence. *Gonzaga*, 536 U.S. at 282. The right established by Section 248(c)(1) is neither vague nor amorphous. The statute clearly identifies the right that it creates – to be free from force or threat of force, physical obstruction, injury, intimidation, or interference when obtaining or providing reproductive health services. It likewise clearly defines the terms involved. *See* 18 U.S.C. § 248(e). Further, Section 248(c)(1) and its criminal counterpart have been the subject of court cases since the FACE Act's enactment in 1994; enforcing the right would not "strain judicial competence." *Cf. Glisson*, 847 F.3d at 378 (explaining that the Child Welfare Act lacks vague and amorphous terms that might strain judicial competence because it "confers a monetary entitlement upon qualified foster families and includes an itemized list of expenses the state must cover"); *DuBerry v. District of Columbia*, 824 F.3d 1046, 1053 (D.C. Cir. 2016) (explaining that the right to carry established by the Law Enforcement Officers Safety Act is not the type of vague and amorphous right that is beyond the competence of the judiciary to enforce because it "sets specific requirements for 'qualified law enforcement officers' in historical and objective terms").

Third, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms. *Gonzaga*, 536 U.S. at 282 (quoting *Blessing*, 520 U.S. at 341). In other words, it must establish "more than a mere congressional

9

preference for a certain kind of conduct." *DuBerry*, 824 F.3d at 1053 (internal quotations omitted). A statute meets this factor when it employs, for example, the words "shall" or "must" in directing actions related to the right at issue. *See Harris*, 442 F.3d at 462 ("[T]he 'must…provide' language of the provision confirms that the statute is 'couched in mandatory, rather than precatory, terms.'" (internal citations omitted)); *Glisson*, 847 F.3d at 378 (citing the statute's "shall make" language as satisfying this factor). Section 248(c)(1) is couched in plainly mandatory terms: it provides that anyone who infringes on the individual right created by the statute "shall be" subject to both criminal penalties and civil remedies.

In sum, because Section 248(c)(1) satisfies all three factors established by the Supreme Court in *Blessing* and *Gonzaga*, Section 248(c)(1) created an individual right.

### iii. Legislative History Confirms that Congress Intended Section 248(c)(1) to Create an Enforceable Federal Right.

Finally, courts have considered legislative history in determining whether Congress intended to create a federal right. *See Johnson*, 390 U.S. at 564-65; *DeLaurentis*, 491 F.2d at 212-13. The legislative history of the FACE Act confirms Congress's intent to create an individual right. While speaking on the Senate floor prior to consideration of the conference report, Senator Kennedy – who introduced the bill – explained that the legislation "establishes a new federal criminal offense prohibiting force, threat of force, physical obstruction or destruction of property intended to interfere with access to reproductive health services. It *establishes a right* to bring federal civil suits to enjoin such conduct and to obtain damages to compensate

10

the victims." 140 Cong. Rec. S5596 (statement of Sen. Edward Kennedy) (emphasis added). Senator Kennedy's sentiments were echoed on the House floor, with Representative Martin Meehan stating, "I rise today in favor of the Freedom of Access to Clinic Entrances Act, not because I support freedom of choice – which I do – but because I support a right that is far more sweeping – the right of every American to live his or her life without fear of physical harm." 140 Cong. Rec. E487 (statement of Rep. Martin Meehan); *see also* 140 Cong. Rec. E913 (statement of Rep. Randy Cunningham) (stating with respect to the FACE Act that "the issue is one of fear of physical violence" and "[r]egardless of our views on the question of abortion, *every citizen* should have this protection") (emphasis added).

Because the language and history of Section 248(c)(1) plainly demonstrate that Congress intended to secure an individually enforceable right provide and obtain reproductive health services free from force or threat of force, physical obstruction, injury, intimidation, or interference, the conspiracy to violate that right alleged in Count One of the Superseding Indictment is proper. The defendants' Motion to Dismiss on that ground should be denied.

### c. Section 241 Conspiracies Require the Government to Prove a Conspiracy to Violate Individual Rights.

The defendants incorrectly posit that Count One charges a conspiracy to violate a civil provision of law. It does not. The defendants have *not* been charged with "conspiring to interfere with 18 U.S.C. § 241(c)(1)." Doc. 102 at 13. A Section 248(c)(1) violation is *not* the "object of the conspiracy." *Id.* Rather, the defendants are

11

charged with conspiring to injure, oppress, threaten, and intimidate employees of reproductive health services facilities in the free exercise and enjoyment of their right to provide and seek to provide reproductive health services. Doc. 54. As explained in the previous section, that right is *secured by* Section 248(c)(1), the civil provision of the FACE Act. In other words, the object of the conspiracy is the violation of the victim employees' individual rights. Count One does not, and should not, allege a Section 241 conspiracy with, as its object, a criminal violation of the FACE Act, because criminal laws do not create individual federal rights. *See United States v. Kozminski*, 487 U.S. 931, 940 (1988) ("[T]he criminal sanction . . . does not create any individual 'right or privilege' as those words are used in § 241.").

Conspiracies under Section 241 are fundamentally different than conspiracies under Section 371. Section 371 encompasses agreements to commit criminal offenses against the United States. 18 U.S.C. § 371. Section 241, however, encompasses agreements to violate *individual rights*. 18 U.S.C. § 241. Again, the defendants are not charged with a conspiracy to commit a FACE Act violation. They are charged with a conspiracy to violate individual rights that are *secured by* Section 248(c)(1). To the extent the defendants believes otherwise, they is wrong, and their motion to dismiss should be denied.

### d. Section 241 Does Not Require State Action.

The defendants assert that Count One is defective because 18 U.S.C. § 241 only covers those conspiracies against rights that are committed under color of law. Doc. 102 at 4. The defendants are incorrect.

12

Section 241, by its own terms, is not limited to conspiracies committed under color of law. Rather, the statute applies where "two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States . . . ." 18 U.S.C. § 241. The statute contains no requirement of state action, and the defendants has identified no cases that graft on such a requirement. Rather, they insist that Section 242's "color of law" element should be read into Section 241. This is incorrect. "It should be apparent from the reading of [Sections 241 and 242] that Section [241] is applicable to instances of conspiracy on the part of both private individuals and public officials, whereas Section [242] is applicable only to public officials who are acting under their authority or color of some state law." *United States v. Ellis*, 43 F. Supp. 321, 326 (W.D.S.C. 1942). In *United States v. Johnson*, the Supreme Court directly considered whether "conspiracies by outside hoodlums" to assault Black patrons of a public restaurant were "subject to criminal prosecution under 18 U.S.C. § 241." *Johnson*, 390 U.S. at 563-54. The Supreme Court held that such "outsiders" were subject to prosecution under Section 241. *Id.* at 567.

Indeed, private actors are regularly charged with and convicted of Section 241 conspiracies. For example, courts have upheld convictions against private actors who conspire to intimidate others in the free exercise of their housing rights, *see, e.g.*, *United States v. Stewart*, 65 F.3d 918 (11th Cir. 1995) (private actors burned a cross in a Black family's yard); *United States v. Wood*, 780 F.2d 955 (11th Cir. 1986) (private actors beat a white woman who associated with members of the Black community in and around

13

her home); against private actors who conspire to oppress others in the free exercise of their right to testify at a federal trial, *see United States v. Pacelli*, 491 F.2d 1108 (2nd Cir. 1979); against private actors who conspire to intimidate others from their right to enjoy public accommodations without discrimination on the base of race, color, religion, and national origin; *Johnson*, 390 U.S. at 567; *United States v. Allen*, 341 F.3d 870 (9th Cir. 2003); and against private actors who conspire to oppress others' voting rights; *Prichard v. United States*, 181 F.2d 326 (6th Cir. 1950); *see also United States v. Mackey*, 2023 WL 363595, at *9 (E.D.N.Y. Jan. 23, 2023).

The cases cited by the defendants do not support their argument that Section 241 somehow requires state action. The defendants cite *United States v. Price*, 383 U.S. 787 (1966) for the proposition that a civil rights conspiracy must include an element of state action. Doc. 102 at 6. *Price* held no such thing. In *Price*, the defendants had been charged with a Section 241 conspiracy to violate the Fourteenth Amendment Due Process Rights of certain individuals. 383 U.S. at 800. The Fourteenth Amendment protects individuals against state action, not against acts done by private individuals. *Id.* (citing *United States v. Williams*, 341 U.S. 70, 92 (1951)). Thus, the Court in *Price* was not determining whether private actors could commit a Section 241 conspiracy writ large; rather, it was answering the much narrower question of whether a private actor could participate in a Section 241 conspiracy *to violate Fourteenth Amendment rights*. *Id.* at 799-800.

Similarly, the defendants cite *United States v. Farmer*, 923 F.2d 1557 (11th Cir. 1991) for the "notion" that Section 241 requires proof of state action. Doc. 102 at 7.

14

Again, *Farmer* contains no such holding. In *Farmer*, the defendant was acquitted of a Section 241 conspiracy, and had a mistrial on a Section 242 count. The narrow question before the court was whether double jeopardy or collateral estoppel barred a second trial on the Section 242 count. *Id.* at 1564. The Eleventh Circuit made no statements regarding the propriety of charging private actors with Section 241 conspiracies.

      Section 241 is not limited, by its plain language, court interpretation, or otherwise, to conspiracies involving state action. The defendants' arguments to the contrary are incorrect, and this Court should deny their motion to dismiss Count One on that ground.

## III. Conclusion

The defendants have failed to identify any defect in Count One of the Superseding Indictment. For the reasons explained above, the United States respectfully asks the Court to deny the defendants Motion to Dismiss Count One of the Superseding Indictment.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:  */s/ Lisa M. Thelwell*
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Lisa.Thelwell@usdoj.gov

*/s/ Laura-Kate Bernstein*
Laura-Kate Bernstein
Trial Attorney
Maryland Bar No. 1212110224
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 598-3519
Facsimile: (202) 514-8336
Email: Laura-Kate.Bernstein2@usdoj.gov