IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              CASE NO. 8:23-cr-25-VMC-AEP-4

CALEB HUNTER FREESTONE,
AMBER MARIE SMITH-STEWART,
ANARELLA RIVERA, and
GABRIELLA VICTORIA OROPESA,

      Defendants.

_____/

## **DEFENDANT GABRIELLA OROPESA'S TRIAL BRIEF**

Defendant, Gabriella Oropesa, through her undersigned counsel, hereby

provides her trial brief. This trial brief also provides the legal basis for Oropesa's

anticipated motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a).

Oropesa previously moved to dismiss Count One of the Superseding Indictment

(Doc. 54), the only count asserted against her, on the basis of these arguments.[1]

*See* Doc. 102 (motion to dismiss), Doc. 118 (reply memorandum), Doc. 123

(supplemental authority), Doc. 238 (renewed motion to dismiss), and Doc. 248

(reply memorandum).    Count One alleges that the defendants, all private

_____

[1] Oropesa hereby incorporates the arguments asserted in her motions to dismiss.

citizens, committed a felony civil rights conspiracy by agreeing to commit

violations of a federal statute, the FACE Act, which itself only provides for civil

and misdemeanor penalties.

Count One alleges the felony offense of "Conspiracy against rights," in

violation of 18 U.S.C. §§ 241 and 2. (Doc. 54 at 4). (According to 18 U.S.C. § 2, in

pertinent part, one who aids and abets an offense is considered a principal.)

According to 18 U.S.C. § 241, in its entirety,

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment *of any right or privilege secured to him by the Constitution or laws of the United States,* or because of his having so exercised the same; or

> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured –

> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241 (emphasis added).

Count One alleges that Oropesa conspired "to injure, oppress, threaten,

and intimidate employees of facilities providing reproductive health services to

the free exercise and enjoyment of the right and privileges secured to them by *the*

*laws* of the United States, namely, the right to provide and seek to provide

reproductive health services as provided by Title 18, United States Code, Section 248(c)(1), in violation of Title 18, United States Code, Section 241." (Doc. 54 at 2) (emphasis added).

Oropesa is entitled to judgment of acquittal under Rule 29(a) for the following reasons.

1. *Section 241, Like Section 242, Requires Proof of State Action*

The grand jury charged Oropesa with conspiring with three other private citizens – none of whom is a state actor - to interfere with the enjoyment of rights or privileges secured by the Constitution or laws of the United States. The companion statute to the civil rights conspiracy statute charged in Count One, 18 U.S.C. § 241, is the substantive civil rights criminal statute, 18 U.S.C. § 242. That statute provides, in pertinent part, that, "Whoever, *under color of any law*, ..., willfully subjects any person in any State...to the deprivation of any rights privileges, or immunities secured or protected by the Constitution of the United States..." is subject to criminal punishment. 18 U.S.C. § 242 (emphasis added). Although there is no Eleventh Circuit Pattern Instruction for § 241, there is for § 242, and the second of three elements requires proof that "the Defendant acted or claimed to act under color of state law." Eleventh Cir. Pattern Instructions (Criminal), Offense Instruction O8. The instruction further provides that, "An unlawful act under color of state law occurs when a person has power only

because that person is an official, and that person does acts that are a misuse or abuse of that power." *Id.* Because neither Oropesa nor any of the alleged coconspirators acted "under color of law" as a government official, § 241 does not apply to them. A conspiracy against rights, like its substantive counterpart, § 242, does not apply to the conduct of wholly private actors.

2. *The FACE Act is Not Among the "Laws of the United States" Enforceable Through 18 U.S.C. § 241*

According again to 18 U.S.C. § 241, in pertinent part,

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution *or laws* of the United States, or because of his having so exercised the same....

(Emphasis added). Obviously, the FACE Act is not a provision of the Constitution. The question, then, is whether the FACE Act is among the "laws" of the United States that may be used as a § 241 predicate. It is not, as the FACE Act's own remedial provisions are extensive, and reflect a congressional intent to penalize violations of the statute with an array of civil and criminal sanctions, (the latter of which are limited to misdemeanor penalties in the circumstances of this case). The felony penalties provided by § 241 are incompatible with Congress's deliberate selection of a host of other penalties specifically located in the FACE Act.

Congress has established a notably comprehensive enforcement scheme in the FACE Act. First, the Act identifies certain "prohibited activities," and provides that anyone who engages in such activities "shall be subject to the (criminal) penalties provided in subsection (b) and the civil remedies provided in subsection (c)." 18 U.S.C. § 248(a). In the circumstances of this case, the most severe criminal penalty available is a misdemeanor.

The relevant "prohibited activities" are found in 18 U.S.C. §§ 248(a)(1) and (3). First, "Whoever, by force or threat of force, or by physical obstruction, intentionally injures, intimidates, or interferes with any person because that person is or has been, or in order to intimidate such person or any other person or any other person or any class of persons from, obtaining or providing reproductive health services," has committed an activity prohibited by 18 U.S.C. § 248(a)(1). Second, "Whoever intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services," has committed an activity prohibited by 18 U.S.C. § 248(a)(3).

The comprehensive enforcement scheme of the FACE Act provides that commission of these prohibited acts can be enforced in any of four ways. First, the United States can enforce the Act criminally under 18 U.S.C. § 248(b). Second, a private person aggrieved by the commission of a prohibited act may bring a civil action under 18 U.S.C. § 248(c)(1). Third, the United States may bring a civil

action under 18 U.S.C. § 248(c)(2) to remedy the commission of a prohibited act. Fourth, a state attorney general may bring a civil action under 18 U.S.C. § 248(c)(3) to remedy the commission of a prohibited act.

To date, there is no Supreme Court or Circuit Court of Appeals authority resolving the question of whether, and if so, in what circumstances § 241 may be used to enforce another federal statute, like the FACE Act. But the Supreme Court's much more extensive 42 U.S.C. § 1983 jurisprudence is helpful. The operative language of Section 1983, adopted at the same post-Civil War period, is virtually identical to Section 241. While Section 1983 protects the "rights, privileges, or immunities secured by the Constitution and laws...," Section 241 protects "any right or privilege secured ... by the Constitution or laws...." A line of Supreme Court authority establishes that § 1983 may be used to enforce other federal statutes, but only in certain circumstances.  Applying the same standard in the criminal context, it is clear that § 241 cannot be used to enforce violations of the FACE Act.

In the context of § 1983, the Supreme Court primarily evaluates whether the "law" sought to be enforced through §1983 contains its own sufficiently extensive enforcement scheme; if it does, supplemental enforcement through §1983 is not available. In *Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1 (1981), for instance, the Court held that, "When the remedial devices

provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id*. at 20. Noting that the two environmental statutes in question in *Sea Clammers* provided remedies that included government compliance orders, civil suits, civil and criminal penalties, and private citizen suits, the Court found that § 1983 was unavailable as an additional enforcement tool. *Id*. at 13, 20. The Court concluded, in a passage that would apply equally to the government's efforts to use § 241 to enforce the FACE Act, "It is hard to believe that Congress intended to preserve the § 1983 remedy when it created so many specific statutory remedies." *Id*. at 20. Similarly, in *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court held that Congress may foreclose a Section 1983 remedy "impliedly, by creating a comprehensive scheme that is incompatible with individual enforcement under § 1983." *Id*. at 343.

The Supreme Court reaffirmed this principle in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005). *Id*. at 120. According to Justice Scalia's opinion for the Court, "The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Id.* at 121. The Court continued,

> As we have said in a different setting, "[t]he express provision of one
> method of enforcing a substantive rule suggests that Congress intended to
> preclude others." Thus, the existence of a more restrictive private remedy
> for statutory violations has been the dividing line between those cases in

> which we have held that an action would lie under § 1983 and those in
> which we have held it would not.

*Id.* at 121 (quotation omitted). Further, "'[W]hen a state official is alleged to

have violated a federal statute which provides its own comprehensive

enforcement scheme, the requirements of that enforcement procedure may not be

bypassed by bringing suit directly under § 1983.'" *Id.* (quotation omitted).

Finally, "[I]n *all* of the cases in which we have held that § 1983 is available for

violation of a federal statute, we have emphasized that the statute at issue ... *did*

*not* provide a private judicial remedy (or, in most of the cases, even a private

administrative remedy) for the rights violated." *Id.* (emphasis in original).

Of course, § 1983 is a civil statute, and § 241 is a criminal statute. But *City of*

*Rancho Palos Verdes*, interpreting the same "Constitution and laws" language

found in § 241, severely limits the instances in which § 1983 may be used to

enforce another federal statute. Further, the constitutional considerations unique

to criminal statutes, especially fair notice and avoiding vagueness, would weigh

more heavily against an expansive interpretation of the "and laws" language in §

241 than the same language in § 1983. Clearly, the FACE Act contains its own

comprehensive enforcement scheme and provides its own criminal penalties. It

is, in the language of *City of Rancho Palos Verdes*, the more "restrictive" remedy.

Accordingly, using § 241 to enforce the FACE Act, elevating a substantive

criminal offense punishable only as a misdemeanor to a felony conspiracy, is incompatible with the Supreme Court's jurisprudence in the closely related § 1983 context.

In *Health and Hospital Corp. of Marion County v. Talevski,* 143 S. Ct. 1444 (2023), the Court reaffirmed that the test is whether Congress has, in a given statute, created a comprehensive enforcement scheme that is incompatible with enforcement through § 1983. *Id.* at 1459. The *Talevski* Court reasoned that the determination of incompatibility requires an assessment of whether there are any indicia of congressional intent to preclude § 1983 enforcement, "such as an express private judicial right of action or any other provision that may signify that intent." *Id.* at 1460. More specifically, "'"The existence of a more restrictive private remedy [in the statute itself] for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not."'" *Id.* (quotations omitted; brackets in original). The *Talevski* Court found that it had previously found that incompatibility exists with "statutes with self-contained enforcement schemes that included statute-specific rights of action." *Id.* at 1461. Moreover, in these instances, "each statute-specific right of action offered fewer benefits than those available under § 1983," and §1983 provided remedies that were unavailable under the specific statutes. *Id.*

This is precisely the problem created if the government were permitted to apply §241 and its felony penalties to punish a conspiracy to violate the FACE Act, which in the circumstances of this case provides only misdemeanor penalties.[2] In the §1983 context, the Supreme Court disavows in the civil arena the use of that statute to enforce "laws" that provide comprehensive enforcement schemes that adopt less extensive remedies. That concern is only more pointed in the criminal context, where the government faces additional constitutional barriers to using §241 to create felony consequences for conduct that is explicitly punishable only as a misdemeanor by Congress in a specific statute, here the FACE Act. Under the Due Process Clause, use of § 241 to enforce the FACE Act creates significant void-for-vagueness and lack of fair notice defects.

According to the Congressional Research Service in a recent paper addressing the substantive civil rights criminal statute, § 242,

> A defendant may violate Section 242 by depriving a person of "any rights, privileges, or immunities secured or protected by" either the "laws of the United States" or the Constitution. With regard to the "laws of the United States," it is unclear if DOJ has brought Section 242 charges in recent history based solely on statutory violations. In the analogous context of civil claims under Section 1983, courts have shown reluctance to imply a *civil* remedy for statutory violations; the courts may be even less likely to impose *criminal* liability under statutes that do not expressly provide for it.

---

[2] There is a readily available criminal conspiracy statute, 18 U.S.C. § 371, which avoids this problem by providing that a conspiracy to commit criminal conduct that is penalized only as a misdemeanor may also be penalized only as a misdemeanor.

Congressional Research Service, "*Federal Police Oversight: Criminal Civil Rights Violations Under 18 U.S.C. § 242*," p. 2 (June 15, 2020) (emphasis in original). (Available at: crsreports.congress.gov/product/pdf/LSB/LSB10495.) In addition to her case, Oropesa has identified only three cases nationally,[3] all brought within the last two years, in which the United States sought to rely on the FACE Act as a statutory predicate for 18 U.S.C. § 241. In one of these three, *United States v. Handy*, __ F. Supp. 3d ____, 2023 WL 4744057 (D.D.C. 2022) (Kollar-Kotelly, J.), the district court, noted the novelty of the government's use of the FACE Act as a predicate for a Section 241 conspiracy charge. The court observed,

> Defendants rightly note that the Government's application of section 241 here is rather novel. To this Court's knowledge, not since approximately a year ago had the Government charged in any district section 241 for obstruction of access to reproductive health services. *See, e.g., United States v. Gallagher*, ___ F. Supp. 3d __, 2023 WL 4317264, at *14 (M.D. Tenn. July 3, 2023). However unconventional the use of section 241 here, clear and longstanding principles of statutory interpretation nevertheless compel the conclusion that the FACE Act is, indeed, a sufficient predicate for section 241.

*Id*. at *3. Although the *Handy* court approved the government's novel use of the FACE Act as a predicate for an 1870 criminal conspiracy statute, the court did so well before the Supreme Court's recent holdings in *Fischer* and *Snyder*. Under this

---

[3] These cases are *United States v. Gallagher*, Case No. 3:22-cr-00327 (M.D. Tenn. 2022) (Trauger, J.), *United States v. Handy*, Criminal Action 22-096 (D.D.C.2022) (Kollar-Kotelly, J.), and *United States v. Zastrow*, Case No. 23-cr-20100 (E.D. Mich. 2023) (Leitman, J.). None have addressed the effect of *Fischer* and *Snyder*, discussed below.

Supreme Court authority, the government's first efforts - 28 years after the enactment of the FACE Act - to subject FACE Act misdemeanants to severe felony penalties, are not permissible.

This is not a case in which the FACE Act provides no criminal penalty; it does. But Congress determined that criminal violations of the FACE Act should, in the circumstances of this case, be penalized as misdemeanors. Here, the government seeks to create a superfluous criminal penalty by applying § 241 to conduct that is subject to a specific, comprehensive enforcement framework deliberately chosen by Congress. This prosecutorial strategy in unsupportable, and Oropesa is entitled to a judgment of acquittal on Count One.

3. *Count One Improperly Alleges that Defendants Conspired to Violate a Non-Enforceable Provision of the FACE Act and that Defendants Aided and Abetted a Conspiracy*

Count One is facially defective for two additional reasons. First, Oropesa is charged with violating § 241 not by conspiring to interfere with any substantive provision of the FACE Act – such as, for instance, the misdemeanors charged in Count Two (18 U.S.C. §248(a)(1)) and in Count Three (18 U.S.C. § 248(a)(3)) - but with conspiring to interfere with 18 U.S.C. 248(c)(1). Section 248(c)(1) is not an enforceable provision of the FACE Act and does not establish any criminal standards. Instead, it is the sub-section of the Act that creates a private civil

action for certain violations of the FACE Act. Clearly, it cannot serve as an object of the conspiracy.

Second, Oropesa is charged in Count One with a conspiracy offense and with the offense of aiding and abetting that conspiracy. (Doc. 54 at 4) (alleging a violation of "18 U.S.C. § 241 and 2.")  This portion of Count One is also facially defective, as 18 U.S.C. § 2 does not create an offense of aiding and abetting a conspiracy.

4. *Count One Does Not State an Offense Under* Fischer *and* Snyder

On the authority of two recent United States Supreme Court opinions, *Fischer v. United States,* 603 U.S. __, 144 S. Ct. 2176 (2024), and *Snyder v. United States,* 603 U.S. __, 144 S. Ct. 1947 (2024), issue is whether the same statutory term of § 241 discussed above, "laws of the United States," is so broad as to embrace the FACE Act.

*Fischer* and *Snyder* adopt a rule of statutory construction that requires courts, when determining the meaning of terms in federal criminal statutes, to grant primary consideration to the risk of disparate punishments. Because § 241 imposes a penalty (in the circumstances of this case) of as many as 10 years' imprisonment for one who conspires to violate a "law[ ] of the United States," but because the FACE Act imposes (in the circumstances of this case) a penalty of

no more than one year's imprisonment, according to the reasoning of *Fischer* and

*Snyder* the FACE Act cannot serve as a valid statutory predicate for section 241.

In *Fischer* and *Snyder,* the Supreme Court rejected the government's

proposed interpretations of two criminal statutes (addressing the offenses of

obstruction of justice and receiving gratuities, respectively) because both

proposals led to unacceptably disparate criminal punishments, contrary to the

most reasonable statutory construction of these laws. Simply put, when courts

interpret federal criminal statutes after *Fischer* and *Snyder*, penalties matter.

In this case, the government prosecutes Oropesa for violating an 1870

criminal conspiracy statute that imposes, upon conviction, as many as 10 years'

imprisonment, but which relies on a substantive predicate statute, enacted in

1994, that imposes a maximum sentence of only one year's imprisonment. This is

a novel use of both criminal statutes, and this unorthodox prosecutorial attempt

to impose severe felony penalties under § 241 for conspiring to commit a FACE

Act misdemeanor is squarely disapproved by the rationales of *Fischer* and *Snyder*

Again, the penalty provision of 18 U.S.C. § 241 provides that persons

convicted of violating the statute

> shall be fined under this title or *imprisoned not more than ten years*, or both;
> and if death results from the acts committed in violation of this section or
> if such acts include kidnapping or an attempt to kidnap, aggravated
> sexual abuse or an attempt to commit aggravated sexual abuse, or an
> attempt to kill, they shall be fined under this title or imprisoned for any
> term of years or for life, or both, or may be sentenced to death.

(Emphasis added).  Thus, for Oropesa, the penalties applicable to the offense charged in Count One establish a statutory maximum of 10 years' imprisonment.

Much like the penalty structure in 18 U.S.C. § 241, the criminal penalties applicable to the FACE Act establish a series of progressively higher statutory maximums proportionate to increasingly aggravated conduct or recidivism.  The FACE Act's criminal penalties provision, section 248(b), provides, in its entirety,

> (b) Penalties- Whoever violates this section shall –
>
> (1) in the case of a first offense, be fined in accordance with this title, or *imprisoned not more than one year*, or both, and
>
> (2) in the case of a second or subsequent offense after a prior conviction under this title, be fined in accordance with this title, or imprisoned not more than 3 years, or both:
>
> *except that for an offense involving exclusively a nonviolent physical obstruction,* the fine shall be not more than $10,000 and *the length of imprisonment shall be not more than six months,* or both, for the first offense; and the fine shall be, notwithstanding section 3571 [establishing maximum fines] be not more than $25,000 and the length of imprisonment shall be not more than 18 months, or both, for a subsequent offense; and except that if bodily injury results, the length of imprisonment shall not be more than 10 years, and if death results, it shall be for any term of years or for life.

18 U.S.C. § 248(b) (emphasis added).[4]

_____

[4] Thus, the criminal penalties applicable to violations of the FACE Act establish a series of seven progressively more severe maximum sentences responsive to recidivism or to aggravated conduct.  The lowest maximum sentence, six months' imprisonment, applies to non-violent physical obstruction. Maximum sentences then range upward to one year's imprisonment for force (or threat of force), to 18 months' imprisonment for second or subsequent convictions for non-violent physical obstruction, to three years' imprisonment for second or

Thus, in the absence of any aggravated conduct or recidivism, offenders under the FACE Act are subject to up to one year's imprisonment (and only six months' imprisonment in the event of non-violent physical obstruction, as opposed to force or threats of force.) Although Oropesa is not charged in the Superseding Indictment with a substantive violation of the FACE Act, it is clear that the conduct she allegedly conspired to commit would establish a maximum penalty of one year's imprisonment, as there is an allegation of the threat of force, but no allegations of aggravated conduct or recidivism.

Because of the stark disparity in the penalties provided by the FACE Act and by § 241, *Fischer* and *Snyder* together compel the conclusion that the FACE Act is not among the "laws of the United States" enforceable through the 1870 Conspiracy Against Rights statute.

In *Fischer v. United States*, 603 U.S. ___, 144 S. Ct. 2176 (2024), the Supreme Court recently provided guidance for determining whether it is appropriate for the "and laws" language in § 241, which establishes a minimum sentence of up to 10 years' imprisonment, to be interpreted to incorporate the FACE Act, which establishes a maximum sentence of no more than one year's imprisonment. The *Fischer* Court adopted an approach to the construction of federal criminal statutes that focuses on the penalties a defendant faces, endorsing a rule that ambiguities

---

subsequent convictions for force (or threat of force), to ten years' imprisonment in the event of bodily injury, and if death results, to life imprisonment, or death.

in statutory language must be resolved in a way that results in the less severe

penalty. In so doing, the *Fischer* Court severely curtailed prosecutorial discretion

to seek, by its charging decisions, to expose citizens to inappropriately severe

penalties.

At issue in *Fischer* was the meaning of a subsection of the Sarbanes-Oxley

Act of 2002, 18 U.S.C. § 1512(c)(2), (which deals generally with obstruction of

justice), and how that language should be interpreted in light of the preceding

subsection, 18 U.S.C. § 1512(c)(1). 144 S. Ct. at 2181-82. The relevant statutory

language is as follows:

> (c) Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other
> object, or attempts to do so, with the intent to impair the object's integrity
> or availability for use in an official proceeding; or
>
> (2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts
> to do so,*
>
> shall be fined ... or imprisoned not more that 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added). Quoting this language, the *Fischer* Court

reasoned that, although the parties agreed that subsection (2) covers some

matters not specifically contemplated by subsection (1), the issue "is defining

what exactly Congress left for (c)(2)." *Id*. at 2183. The Court noted that Congress

either, as the government argued, could have criminalized *all* obstructive acts in

(c)(2), while naming just a few examples in (c)(1), or Congress could have

criminalized the specific obstructive acts in (c)(1) and instead used (c)(2) much less expansively, to "fill any inadvertent gaps that might exist." *Id.* The Court rejected the government's proposal to interpret (c)(2) to cover all types of obstruction of justice.

The *Fischer* Court identified a fundamental problem with the government's expansive reading of § 1512(c)(2). According to the Court,

> The broader context of Section 1512 in the criminal code confirms that (c)(2) is limited by the scope of (c)(1). Federal obstruction law consists of numerous provisions that target specific criminal acts and settings. *See* 18 U.S.C. ch. 73. Much of that particularized legislation would be unnecessary if (c)(2) criminalized essentially all obstructive conduct, as the Government contents [listing, § 1503(a)(intimidation of jurors or court officers); § 1504 (written influencing of jurors); § 1505 (obstructing congressional investigations); §1507 (picketing in locations with intent to impede the administration of justice); § 1509 (obstructing performance of court-ordered duties); § 1510 (obstructing federal investigations through bribery); § 1511(a) (obstructing state and local enforcement to facilitate gambling); and §§§ 1516, 1517, 1518 (obstructing audits, financial examinations, and healthcare-related investigations)].

> If the Government were correct, then the "otherwise obstructs, influences, or impedes any official proceeding" provision – which is buried in subsection (c)(2) of Section 1512 – would largely obviate the need for that broad array of other obstruction statutes. *In light of our obligation to give meaning where possible to each word and provision in the Code, our narrower interpretation of subsection (c)(2) is the superior one.*

*Id.* at 2187 (citation omitted; emphasis added).

In addition to the need to consider the whole of the federal criminal code, imparting meaning to each word and provision whenever possible, the *Fischer* Court also emphasized the necessity of considering Congress's careful

distinctions among different categories of criminally obstructive conduct, and

more important, Congress's deliberate attribution of an appropriate penalty to

each category of criminal conduct. The Court reasoned,

> An unbounded interpretation of subsection (c)(2) would also render superfluous the careful delineation of different types of obstructive conduct in Section 1512 itself. That section provides a reticulated list of nearly two dozen means of committing obstruction, with varying degrees of culpability and penalties ranging from three years to life in prison, or even death. Section 1512(a)(2)(B)(iv), for example, authorizes up to 30 years' imprisonment for someone who uses or attempts to use physical force against another person with the intent of causing him to be absent from an official proceeding. *See* § 1512(a)(3)(B)(ii) (specifying punishment). Section 1512(d)(1), by contrast, authorizes only three years' imprisonment for someone who harasses another person and thereby dissuades him from attending an official proceeding.

> Reading (c)(2) to cover all forms of obstructive conduct would override Congress's careful delineation of which penalties were appropriate for which offenses. Most instances of these official acts would instead fall under subsection (c)(2)'s sweeping reach, which provides a 20-year maximum term of imprisonment. Such a reading of subsection (c)(2) would lump together disparate types of conduct for which Congress had assigned proportionate penalties in (a)(2) and (d)(1).

*Id.*

In the accompanying footnote, the Court rejected the argument that,

because subsection (c)(2) carries a 20-year statutory maximum but no minimum

mandatory sentence, prudent exercises of prosecutorial and judicial discretion

could be trusted to avoid the possibility of an inappropriately severe sentence.

*Id.* at 2187, n. 2. According to the Court, "Congress might have thought (c)(2)

prohibited conduct of varying severity. But it does not follow that it designed

(c)(2) to reach forms of conduct already covered in Chapter 73 with far lower maximum sentences. It would be improper to substitute for those fine-grained statutory distinctions the charging discretion of prosecutors and the sentencing discretion of district courts." *Id.*

The *Fischer* Court then observed that its usual approach in obstruction cases is to avoid reading particular subsections to create a "coverall" statute. *Id.* at 2189. "Nothing in the text or statutory history suggests that subsection (c)(2) is designed to impose up to 20 years' imprisonment *on essentially all defendants who commit obstruction of justice in any way and who might be subject to lesser penalties under more specific obstruction statutes.*" *Id.* (emphasis added). In Oropesa's case, the government's efforts to employ § 241 as exactly this kind of "coverall" statute are flawed for precisely this reason. The *Fischer* Court concluded that instead of interpreting (c)(2) as a "one-size-fits-all solution" to obstruction of justice, it must read the text of (c)(2) only "in light of the context of (c)(1)." *Id.* As the Court explained,

> Doing so affords proper respect to "the prerogatives of Congress" in carrying out the quintessentially legislative act of defining crimes and setting the penalties for them. We have long recognized that "the power of punishment is vested in the legislative, not in the judicial department," and we have as a result "'traditionally exercised restraint in assessing the reach of a federal criminal statute.'" *The Government's reading of Section 1512 would intrude on that deliberate arrangement of constitutional authority over federal crimes, giving prosecutors broad discretion to seek a 20-year maximum sentence for acts Congress saw fit to punish only with far shorter terms of imprisonment,* for example three years for harassment ... or ten years for threatening a juror....

*Id.* at 2189-90 (quotations omitted; emphasis added).

Two days before *Fischer*, the Supreme Court in *Snyder v. United States*, 603 U.S. __, 144 S. Ct. 1947 (2024), also looked to assessing the risk of prosecutorial choices of disparate statutory penalties as a critical tool for construing a federal criminal statute. At issue in *Snyder* was whether 18 U.S.C. § 666 criminalized only the receipt of bribes, or the receipt of both bribes and gratuities. 144 S. Ct. at 1951. The statute "makes it a crime for state and local officials to 'corruptly' solicit, accept, or agree to accept 'anything of value from any person, intending to be influenced or rewarded' for an official act." *Id., quoting* § 666(a)(1)(B). *Id.* The *Snyder* Court concluded that the statute reaches only bribes that are given or promised before an official act, not gratuities given after an official act. *Id.*

The Court listed six reasons for its conclusion. *Id.* at 1954. One reason, pertinent here, is the question of "statutory punishments." *Id.* at 1956. Here, the *Snyder* Court compared the single 10-year maximum punishment applying to Section 666, which again applies only to state and local officials, with the statutory punishments that apply to federal officials in the same circumstances. *Id.* The statute applying to federal officials, *Snyder* noted, establishes a 15-year maximum sentence for accepting a bribe, but only a 2-year maximum sentence for accepting a gratuity. *Id., citing* 18 U.S.C. §§ 201(b) & (c). According to the Court,

> If the Government were correct that § 666 also covered gratuities, Congress would have created an entirely inexplicable regime for state and local officials. For one, even though bribery has been treated as a far more serious offense, Congress would have authorized the same 10-year maximum sentences for (i) gratuities to state and local officials and (ii) bribes to state and local officials. In addition, Congress would have authorized punishing gratuities to state and local officials five times more severely than gratuities for federal officials – 10 years for state and local officials compared to 2 years for federal officials.

*Id*. (citation omitted). Simply stated, "The Government cannot explain why Congress would have created such substantial sentencing disparities." *Id*. [5]

In summary, *Fischer* and *Snyder* reflect a concern by the Supreme Court about interpreting federal criminal statutes in a way that empowers the government to select "coverall" offenses that expose defendants to enhanced and disparate penalties for specifically criminal conduct that Congress has consciously chosen to punish less severely. By permitting a felony penalty of up to 10 years' imprisonment for inchoate conduct that is punishable substantively as a misdemeanor, Section 241 is obviously the kind of "coverall" statute condemned by *Fischer* and *Snyder*.

---

[5] The *Snyder* Court added, "We cannot readily assume that Congress authorized a 2-year sentence for, say, a Cabinet Secretary who accepts an unlawful gratuity while authorizing a 10-year sentence on a local school board member who accepts an identical gratuity. What sense would that make? In short, the inexplicable anomalies ushered in by the Government's approach powerfully demonstrate that § 666 is a bribery statute." *Id*. So too is it an "inexplicable anomaly," as the government seeks in this case, to punish a substantive offense as a misdemeanor and a conspiracy to commit that offense as a felony punishable by as many as 10 years in prison.

5. *A Conspiracy to Violate the FACE Act May Only Be Charged and Punished as a Misdemeanor Only Through § 371*

The FACE Act includes no conspiracy provision. The most reasonable conclusion is that this reflects a deliberate legislative choice. In other words, Congress consciously chose to reserve punishment under the FACE Act - which again, in most cases, takes the form of misdemeanor sanctions – for only substantive, not inchoate, crimes. Accordingly, the novel creation of a conspiracy offense by resorting to Section 241 squarely violates congressional intent, and is impermissible for that reason alone.

But even assuming for a moment that the government may look elsewhere in the United States Code for authority to charge a conspiracy to violate the FACE Act, one is readily available.  And more important, it avoids the fatal defect identified in *Fischer* and *Snyder*. The general criminal conspiracy statute, 18 U.S.C. § 371, provides for a maximum sentence of five years' imprisonment for conspiracy to commit any offense against the United States. The statute also provides, "If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such a conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C. § 371. Unlike § 241, the residual conspiracy statute, § 371, does not present the problem identified, and resolved, by *Fischer* and *Snyder*. In fact, § 371 anticipates *Fischer* and *Snyder*, and provided an earlier and eminently sensible

solution. Simply put, if a substantive offense is a misdemeanor, a conspiracy to commit that offense must surely be a misdemeanor as well.

WHEREFORE, for these reasons, Oropesa's Rule 29(a) motion must be granted.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

/s/ Matthew Farmer
Matthew P. Farmer, Esq.
Fla. Bar No. 0793469
800 W. De Leon St.
Tampa, FL 33606
(813) 228-0095
FAX (813) 224-0269
MattFarmer1@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 10th day of December, 2024:

AUSA Courtney Derry
Courtney.Derr @usdoj.gov

AUSA Laura-Kate Bernstein
Laura-Kate.Bernstein@usdoj.gov

AUSA Daniel Grunert
Daniel.Grunert@usdoj.gov

Michael Maddux, Esq.
mmaddux@madduxattorneys.com

Lauren Regan, Esq.

lregan@cldc.org

Vanessa King, Esq.
vanessa@vlklegal.com

_/s/ Matthew Farmer_
COUNSEL